Connie L. Chen (SBN 275649)
connie.chen@jacksonlewis.com
**JACKSON LEWIS P.C.**
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430

Attorneys for Defendants
WALDORF=ASTORIA EMPLOYER LLC (erroneously sued as WALDORF ASTORIA EMPLOYER, LLC) and WALDORF=ASTORIA MANAGEMENT LLC (erroneously sued as WALDORF ASTORIA MANAGEMENT, LLC)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMONY BLOSSOM, individual and behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>WALDORF ASTORIA EMPLOYER, LLC, a limited liability company; WALDORF ASTORIA MANAGEMENT, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>    Defendants. | **CASE NO.:** 2:23-CV-10510<br><br>[Los Angeles Superior Court Case No. 23STCV27316]<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441 (CAFA)**<br><br>*(Filed concurrently with Declarations of Connie L. Chen, James Smith, and Lea Nissen; Notice of Interested Parties; Corporate Disclosure Statement; and Civil Cover Sheet)*<br><br>Complaint filed: November 6, 2023 |

**TO THE HONORABLE CLERK AND JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF HARMONY BLOSSOM AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendants Waldorf=Astoria Employer LLC and Waldorf=Astoria Management LLC (together, "Defendants") hereby remove the above-entitled action to this Court from the Superior Court of the State of California, County of Los Angeles, pursuant to 28 U.S.C. § 1441. Defendants invoke this Court's original

jurisdiction under 28 U.S.C. § 1332(d) (the Class Action Fairness Act). Defendants submit this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff Harmony Blossom ("Plaintiff") and without conceding that Plaintiff has pled claims upon which relief can be granted. This removal is based on the following grounds:

## PROCEDURAL BACKGROUND

1. On November 6, 2023, Plaintiff filed an unverified Complaint ("Complaint") against Defendants in the Los Angeles Superior Court entitled "*Harmony Blossom, individually and on behalf of all others similarly situated, v. Waldorf Astoria Employer, LLC, a limited liability company; Waldorf Astoria Management, LLC, a limited liability company; and DOES 1 through 10, inclusive,*" Case No. 23STCV27316, which alleged eight causes of action: (1) failure to pay minimum wages [Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197'; (2) failure to pay overtime compensation [Cal. Lab. Code § 1194 and 1198]; (3) failure to provide meal periods [Cal. Lab. Code §§ 226.7 and 512]; (4) failure to authorize and permit rest breaks [Cal. Lab. Code §§ 226.7]; (5) failure to indemnify necessary business expenses [Cal. Lab. Code § 2802]; (6) failure to timely pay final wages upon termination [Cal. Lab. Code §§ 201-203]; (7) failure to provide accurate itemized wage statements [Cal. Lab. Code § 226]; and (8) unfair business practices [Cal. Bus. & Prof. Code §§ 17200, *et seq.*] A true and correct copy of the Summons, Complaint ("Compl."), Civil Case Cover Sheet and related case documents filed in the Los Angeles Superior Court and served on Defendants is attached as **Exhibit A** to the Declaration of Connie L. Chen ("Chen Decl."), filed concurrently with this Notice of Removal. (Chen Decl., ¶ 3.)

2. As stated in Paragraph 22 of the Complaint, Plaintiff filed the instant action on behalf of herself and a putative class consisting of "[a]ll persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." (Compl., ¶ 22).

3. On November 13, 2023, Hon. Stuart M. Rice of the Los Angeles County Superior Court issued an Initial Status Conference Order and Minute Order setting an Initial Status Conference for February 16, 2024, which Plaintiff served on Defendants. (Chen Decl., ¶ 4.) True and correct copies of these orders are included in **Exhibit A** to the Chen Declaration. (*Id.*)

4. On November 16, 2023, Plaintiff personally served the Summons, Complaint, Civil Case Cover Sheet, and related case documents on Defendants' registered agent for service of process. A true and correct copy of the Proofs of Service are attached as **Exhibit B** to the Chen Decl. (Chen Decl., ¶ 5.)

5. As of the date of this Notice of Removal, Exhibit A to the Chen Decl. constitutes all of the process, pleadings, and orders served on Defendants in this action. (Chen Decl., ¶ 6).

6. On December 14, 2023, Defendants filed and served an Answer to the Complaint in Los Angeles County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. A true and correct copy of Defendants' Answer is attached as **Exhibit C** to the Chen Declaration. (Chen Decl., ¶ 7.)

## REMOVAL IS TIMELY

7. This Notice of Removal has been filed within thirty (30) days after Defendants were served with a copy of Plaintiff's Summons, Complaint, and Civil Case Cover Sheet. Therefore, this removal has been timely filed pursuant to 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received."); *see also* California Code of Civil Procedure § 415.30(b).

## VENUE

8. This action was filed in the Superior Court in and for the County of Los Angeles. Thus, pursuant to 28 U.S.C. § 1441(a), Defendants are removing this action to

the United States District Court for the Central District of California as the district "embracing the place where [the] action is pending."

## REMOVAL IS PROPER BASED ON THE CLASS ACTION FAIRNESS ACT

9. Removal of this action is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

10. In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

11. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from one of the Defendants. *See* 28 U.S.C. §§ 1332(d) and 1453. Furthermore, none of the Defendants are a State, State official, or other governmental entity.

### A. The Putative Class Contains More than 100 Members.

12. To qualify for original jurisdiction under CAFA the number of putative class members encompassed by the proposed class action must number at least 100 members in the aggregate. *See* 28 U.S.C. § 1332(d)(5)(b).

13. Defendants' records identify approximately 717 putative class members in the class, as defined by Plaintiff in her Complaint. (Declaration of Lea Nissen ("Nissen Decl."), ¶ 7; Compl., ¶ 25(a)). Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.     None of the Named Defendants are Government Entities.**

14.    None of the Defendants are a State, State official, or any other governmental entity.

**C.     Minimal Diversity Is Satisfied Under CAFA.**

15.    The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. § 1332(a)-(c). CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2); *see also Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

16.    Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

17.    For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

18.    Plaintiff is, and was at all times relevant to this action, a resident of the State of California. (Compl. ¶ 7).

19.    For diversity purposes, a limited liability company is deemed to be a citizen of any state in which any member of the company is a citizen. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

20. For diversity purposes, a corporation is considered a citizen of any state by which it is incorporated and of the state where it has its principal place of business. (28 U.S.C. § 1332(c)(1)). With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id*. A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. *Id*.

21. Defendant Waldorf=Astoria Employer, LLC is duly formed under the laws of the state of Delaware. (Declaration of James Smith ("Smith Decl."), ¶ 4.) At all relevant times, Defendant Waldorf=Astoria Employer LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id*.) Defendant Waldorf=Astoria Employer LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id*.) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id*.) Its members also meet at its headquarters in McLean, Virginia. (*Id*.)

22. Defendant Waldorf=Astoria Employer LLC's sole member is Hilton Employer Inc. (Smith Decl., ¶ 5.) At all relevant times, Hilton Employer Inc.'s headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id*.) Hilton Employer Inc. controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id*.) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from its headquarters. (*Id*.)

23. Thus, Defendant Waldorf=Astoria Employer LLC is a citizen of Delaware and Virginia and Plaintiff, a citizen of California, is diverse from Defendant Waldorf=Astoria Employer, LLC.

24. Defendant Waldorf=Astoria Management LLC is duly formed under the laws of the state of Delaware. (Smith Decl., ¶ 6.) At all relevant times, Defendant Waldorf=Astoria Management LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id*.) Defendant Waldorf=Astoria Management LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id*.) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id*.) Its members also meet at its headquarters in McLean, Virginia. (*Id*.)

25. Defendant Waldorf=Astoria Management LLC's sole member is Hilton Domestic Operating Company Inc. (Smith Decl., ¶ 7.) At all relevant times, Hilton Domestic Operating Company Inc.'s headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id*.) Hilton Domestic Operating Company Inc. controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id*.) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id*.)

26. Thus, Defendant Waldorf=Astoria Management LLC is a citizen of Delaware and Virginia and Plaintiff, a citizen of California, is also diverse from Defendant Waldorf=Astoria Management, LLC.

**D.     The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[1]**

27.     Plaintiff does not allege any particular amount in controversy. Where a plaintiff's state court complaint does not specify the particular amount of damages claimed, the United States Supreme Court has held "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and the statement need not contain evidentiary submissions. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553, 554 (2014). Even if an evidentiary showing were required, Defendants need only show by a preponderance of the evidence that the amount-in-controversy requirement has been satisfied. *Id.* at 553-54; *see also Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

28.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA: "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of

---

[1] Defendants deny each and every allegation set forth by Plaintiff in the Complaint and deny that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief. Defendants also deny that this action can proceed as a class or representative action. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the operative complaint.

8

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441 (CAFA)

exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . .").

29. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 993, 1001 (C.D. Cal. 2002) *citing Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim"). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan,* 395 U.S. 402, 407 n.3 (1969).

30. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 991-994 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.,* 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of

defendant's liability"); *Arias v. Residence Inn,* 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

31. In *Dart Cherokee Basin Operating Company, LLC v. Owens,* the United States Supreme Court held, like here, where the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart,* the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.,* 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.,* 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart,* 135 S. Ct. at 554.) On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183-84 (9th Cir. 2015).

32. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (citing *Caterpillar, Inc. v.*

10
NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441 (CAFA)

*Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

33. The amount in controversy may include general and special compensatory damages and attorneys' fees that are recoverable by statute, such as the provisions of the California Labor Code at issue in this case. *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-1156 (9th Cir. 1998); *Goldberg v. C.P.C. International, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorney's fees may be taken into account to determine jurisdictional amount); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975) ("It is settled that the statutory penalty and a statutory attorney's fees can be considered in determining whether the jurisdictional amount is met").

34. A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations." *Oda v. Gucci America, Inc.*, No. 2:14-cv-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *12 (C.D. Cal. Jan. 7, 2015); *see Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB (PLAx), 2015 U.S. Dist. U.S. LEXIS 55667, at *5 (C.D. Cal. Apr. 28, 2015). ("[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages.") (citation omitted). *See also LaCross v. Knight Transport. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in

controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy"). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what Defendants will actually owe. *LaCross*, 775 F.3d at 1202 (explaining that courts are directed "to first look to the complaint in determining the amount in controversy") (citation omitted).

35. Defendants deny that they engaged in any Labor Code violations. But, because a plaintiff's allegations are treated as true for purposes of determining the amount in controversy, Defendants are able to provide approximate damage calculations—based on a reasonable, theoretical percentage of violations—for purposes of demonstrating the claims at issue satisfy the minimum damages threshold required for original jurisdiction under CAFA. Courts routinely find that such theoretical projections are "reasonable" in the face of allegations like Plaintiff's here. *See, e.g., Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (noting that courts "routinely apply a 20% violation rate . . . for meal and rest period premiums"); *Baker v. Propak Logistics, Inc.,* 2019 WL 4168998, at *5 (C.D. Cal. Sept. 3, 2019) (finding assumptions of a 40% meal break violation rate and 20% rest break violation rate reasonable because "an allegation of 'pattern and practice' of violations . . . impl[ies] that violations occurred routinely and frequently, and not occasionally or sporadically"); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding assumption of a 60% violation rate reasonable where plaintiff alleged that defendant had a "policy and practice of meal and rest period violations"); *Torrez v. Freedom Mortg. Corp., 2017 WL 2713400*, at *4 (C.D. Cal. June 22, 2017) (finding assumption of a 40% violation rate reasonable).

36. Here, as detailed below, Defendants have both plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 and the Court has jurisdiction pursuant to CAFA. Plaintiff's claims place an aggregate amount in controversy exceeding $5,000,000, as follows:

      a.    At the Waldorf Astoria Beverly Hills where Plaintiff was employed, Defendants Waldorf=Astoria Employer LLC and Waldorf=Astoria Management LLC collectively employ or previously employed approximately 717 non-exempt employees (the "WABH Employees").[2] (Nissen Decl., ¶ 7.) Approximately 303 of the WABH Employees separated their employment during the time period of November 6, 2020 to September 15, 2023. (*Id.* at ¶ 8.)

      b.    The majority of the WABH Employees are full time employees who typically work eight hours per day, five days per week. (Nissen Decl., ¶ 9.)

      c.    The hourly rate of pay of the WABH Employees who have been employed by Waldorf in the past year (December 2022 to present) ranges from $15.00 per hour to approximately $51.20 per hour, with the current average hourly rate of pay being $24.71. (Nissen Decl., ¶ 10.)

      d.    Approximately 223,406 shifts were worked by the WABH Employees between November 6, 2019, and September 15, 2023. (Nissen Decl., ¶ 11.)

      e.    The Putative Class Members have been paid on either a bi-weekly basis or semi-monthly basis throughout the period from November 6, 2019 to September 15, 2023. (Nissen Decl., ¶ 12.)

34.  **Minimum Wage.** Plaintiff's first cause of action alleges Defendants failed to pay Plaintiff and putative class members minimum wages. (Compl. ¶¶ 14, 29–38). California Labor Code § 1194 provides that any employee who receives less than the legal minimum wage applicable to the employee is entitled to recover the unpaid balance of the full amount of the minim wage. Cal. Lab. Code § 1194. Conservatively estimating that Plaintiff will attempt to recover one and a half (1.5) hours of unpaid non-overtime work applicable for every five (5) shifts worked, and conservatively assuming that the

---

[2] Waldorf=Astoria Management LLC employed non-exempt hotel workers at the Waldorf Astoria Beverly Hills from November 6, 2019 through December 31, 2019. Since January 1, 2020, Waldorf=Astoria Employer LLC has employed non-exempt hotel workers at the Waldorf Astoria Beverly Hills. (Nissen Decl., ¶ 13.)

WABH Employees were earning only $15.50 per hour[3], this claim alone places in controversy at least **$1,038,837.90** (1.5 x (.20 x 223,406) x $15.50 = $1,038,837.90)[4].

35.    **Overtime Premiums.** Plaintiff's second cause of action alleges Defendants failed to pay Plaintiff and putative class members all overtime premiums owed. Compl. ¶¶ 14-15, 39–47. California Labor Code § 510 provides that all work in excess of (1) eight hours in one workday; (2) 40 hours in any one workweek; and (3) the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Cal. Lab. Code § 510. Conservatively estimating that Plaintiff will attempt to recover one (1) hour of unpaid overtime for every five (5) shifts worked, and conservatively assuming that the WABH Employees were earning only $15.50 per hour, this claim alone places in controversy at least **$1,038,837.90** (1 x (.20 x 223,406) x $15.50 x 1.5 = $1,038,837.90)[5].

36.    **Meal Periods.** Plaintiff's third cause of action alleges Defendants failed to provide Plaintiff and putative class members with legally complaint meal periods. (Compl. ¶¶ 16, 48–51). California Labor Code § 226.7 provides that employees are entitled to one additional hour of pay at the employee's regular rate of compensation for each workday that a legally complaint meal period was not timely provided. Cal. Lab. Code § 226.7. Conservatively estimating that Plaintiff will attempt to show that Plaintiff and Putative Class Members were not provided one (1) compliant meal period for every five (5) shifts worked, and conservatively assuming that the WABH Employees were

---

[3] California state minimum wage in 2023 is $15.50.

[4] This does not account for liquidated damages ("double damages") that Plaintiff seeks to recover pursuant to Labor Code section 1194.2. (Compl., ¶ 36.)

[5] For convenience and ease of calculation, Defendants are assuming that the hourly overtime rate is 1.5 times $15.50. Defendants deny that they failed to compensate Plaintiff and the Putative Class Members for all overtime hours worked at 1.5 times the "regular rate of pay" pursuant to Labor Code Section 510.

earning only $15.50 per hour, this claim places in controversy at least **$692,558.60** (1 x (.20 x 223,406) x $15.50 = $692,558.60)[6].

37. **Rest Breaks.** Plaintiff's fourth cause of action alleges Defendants failed to provide Plaintiff and putative class members with legally complaint rest periods. (Compl. ¶¶ 17, 52–55). California Labor Code § 226.7 provides that employees are entitled to one additional hour of pay at the employee's regular rate of compensation for each workday that a rest break was not provided. Cal. Lab. Code § 226.7. Conservatively estimating that Plaintiff will attempt to show that Putative Class Members were not provided one (1) compliant rest period for every five (5) shifts worked, and conservatively assuming that the WABH Employees were earning only $15.50 per hour, this claim places in controversy at least **$692,558.60** (1 x (.20 x 223,406) x $15.50 = $692,558.60).

38. **Wages Upon Separation.** Plaintiff's sixth cause of action alleges Defendants failed to timely pay all wages owed to Plaintiff and putative class members following termination of employment with Defendants. (Compl. ¶¶ 60–66). California Labor Code § 203 provides that if an employer willfully fails to pay any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced, up to a maximum of thirty (30) days. Cal. Lab. Code § 203. Given the number of WABH Employees whose employment terminated during the time period of November 6, 2020 to September 15, 2023, and conservatively assuming that the WABH Employees were earning only $15.50 per hour, this claim places in controversy **$1,127,160.00** (8 hours/day x $15.50/hour x 30 days x 303 = $1,127,160.00).

40. **Wage Statements.** Plaintiff's seventh cause of action alleges Defendants intentionally and willfully failed to provide Plaintiff and putative class members with complete and accurate wage statements. (Compl. ¶¶ 19, 67–74). California Labor Code §

---

[6] For convenience and ease of calculation, Defendants are assuming that meal and rest break premiums are paid at a rate of $15.50. Defendants deny that they failed to properly pay meal and rest break premiums to Plaintiff and the Putative Class Members at the "regular rate of pay" pursuant to Labor Code section 226.7.

226 provides that employees may recover actual damages or $50 for the initial pay period in which a violation occurs, and $100 for subsequent pay periods, not to exceed $4,000. Cal. Lab. Code § 226. The WABH Employees have been paid on either a bi-weekly basis or semi-monthly basis throughout the period from November 6, 2019 to September 15, 2023. (Nissen Decl. at ¶ 12.) Assuming that each of the approximately 717 WABH Employees received 10 noncompliant wage statements during the applicable timeframe, for a total of $950 per employee (one $50.00 penalty for the first violation plus nine $100.00 penalties for subsequent violations), for all 717 class members, this claim places in controversy at least **$681,150.00** ($950 x 717 = $681,150.00).

41. Accordingly, the amount placed in controversy by Plaintiff's Complaint *conservatively* exceeds **$5,271,103.** This does not include the damages that are potentially recoverable from other claims that Plaintiff is asserting on behalf of herself and the Putative Class Members, including: (1) failure to reimburse necessary expenses in violation of Labor Code § 2802 (Compl. ¶¶ 18, 56-59); and (2) unlawful business practices in violation of Business & Professions Code §§ 17200, *et seq.* (Compl. ¶¶ 75-93). This amount is also based on the amount in controversy through September 15, 2023 only and could also be considerably greater if one were to assume a higher violation rate and a higher rate of pay earned by the Putative Class Members.

42. Importantly, the above estimates of the amount in controversy reach the jurisdictional threshold without including the unspecified amount of attorneys' fees that Plaintiff seeks. (Compl. ¶¶ 38, 46, 59, 66, Prayer for Relief). In determining whether a complaint meets the amount in controversy threshold for a removal under 28 U.S.C. § 1332, a court may also consider the value of claims for attorney's fees. *See Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorney's fees may be taken into account to determine jurisdictional amount); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (holding the amount in controversy may include attorney's fees recoverable by statute). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousand dollars or more. *See, e.g.*,

*McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018).

43. "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

44. For the foregoing reasons, and without conceding or admitting to the underlying merit of Plaintiff's claims, the amount in controversy easily surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## NOTICE TO ALL PARTIES AND STATE COURT

45. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting pleadings will be served promptly on Plaintiff's counsel and filed with the Clerk of the Los Angeles County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be satisfied.

## CONCLUSION

46. Based on the foregoing, Defendants hereby remove the above-captioned action from the Orange County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully request that this Court retain jurisdiction for all further proceedings.

Dated: December 15, 2023                     **JACKSON LEWIS P.C.**

                                        By:   */S/ Connie L. Chen*
                                              Connie L. Chen

                                              Attorneys for Defendants
                                              WALDORF=ASTORIA EMPLOYER
                                              LLC and WALDORF=ASTORIA
                                              MANAGEMENT LLC

# PROOF OF SERVICE

**U.S.D.C. CENTRAL DISTRICT**

**CASE NAME:** **HARMONY BLOSSOM V. WALDORF ASTORIA EMPLOYER, LLC, ET AL.**

**CASE NUMBER:**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 725 South Figueroa Street, Suite 2500, Los Angeles, California 90017.

On **December 15, 2023,** I served the foregoing documents described as:

1. **CIVIL CASE COVER SHEET**
2. **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441(b);**
3. **DEFENDANTS' CORPORATE DISCLOSURE STATEMENT;**
4. **DECLARATION OF LEA NISSEN IN SUPPORT OF NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**
5. **DECLARATION OF JAMES SMITH IN SUPPORT OF NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**
6. **DECLARATION OF CONNIE CHEN IN SUPPORT OF NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA;**
7. **DEFENDANTS' NOTICE OF INTERESTED PARTIES;**
8. **DEFENDANTS' NOTICE OF RELATED CASES**

in this action addressed as follows:

| | |
|---|---|
| Kane Moon<br>kmoon@moonlawgroup.com<br>Daniel J. Park<br>dpark@moonlawgroup.com<br>Michael Citrin<br>mcitrin@moonlawgroup.com<br>MOON LAW GROUP, PC<br>1055 W. Seventh Street, Suite 1880<br>Los Angeles, CA 90017<br>Telephone: (213) 232-3128<br>Facsimile: (213) 232-3125 | *Attorneys for plaintiff,*<br>*Harmony Blossom* |

1  **[X]** **BY MAIL**
        As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**[X]** **BY E-MAIL OR ELECTRONIC TRANSMISSION**
        Based on a Court order or on an agreement by the parties to accept service by e-mail or electronic transmission or Notice of Electronic Filing generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(D), I caused the document(s) described above to be sent from e-mail address Pamela.Trujillo@jacksonlewis.com to the persons at the e-mail address listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**[X]** **FEDERAL:**  I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

        Executed on December 15, 2023 at Los Angeles, California.

                                                    *PAMELA TRUJILLO*
                                                    Pamela Trujillo

4889-8191-8099, v. 3

2
PROOF OF SERVICE