Kane Moon (SBN 249834)
    E-mail: kmoon@moonlawgroup.com
Daniel J. Park (SBN 274973)
    E-mail: dpark@moonlawgroup.com
Michael Citrin (SBN 335033)
    E-mail: mcitrin@moonlawgroup.com
**MOON LAW GROUP, PC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125

*Attorneys for* Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMONY BLOSSOM, individually, and on behalf of all others similarly situated;<br><br>            Plaintiff,<br>      v.<br><br>WALDORF ASTORIA EMPLOYER, LLC, a limited liability company; WALDORF ASTORIA MANAGEMENT, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No.: 2:23-CV-10510<br>[Los Angeles Superior Court Case No. 23STCV27316]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF:**<br><br>**(Declaration of Michael Citrin; [Proposed] Order Filed Concurrently)**<br><br>(Declaration of Daniel J. Park; [Proposed] Order Filed Concurrently)<br><br>Date:      February 26, 2024<br>Time:               9:00 am<br>Location:        Courtroom 7C<br><br>Complaint Filed:  November 6, 2023<br>Removal Filed:    December 14 2023<br>Trial Date:       None Set |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on February 26 at 9:00 a.m., or as soon thereafter as may be heard, in the Courtroom 7C of the United States District Court for the Central District of California, located at the First Street Courthouse, 350 West First Street, Los Angeles, California, 90012, Plaintiff Harmony Blossom ("Plaintiff") will and hereby does move for an order remanding this action to the Los Angeles County Superior Court.

Plaintiff moves for remand pursuant to 28 U.S.C. § 1447 on the ground that this Court does not have removal jurisdiction over this case. Defendants Waldorf=Astoria Employer LLC and Waldorf=Astoria Management LLC (together, "Defendants") improvidently removed this action from state court, as they have failed to prove, and have failed to demonstrate they will be able to prove, that the total amount in controversy exceeds the sum of $5,000,000 as required for jurisdiction under the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1332(d) ("CAFA"). As a result, Plaintiff seeks remand to the Superior Court for the County of Los Angeles, where this case was originally filed and where it rightfully belongs.

This motion is based on this Notice, the Memorandum of Points and Authorities, any documents Plaintiff may subsequently file, all other pleadings and papers on file, and any oral argument or other matter that may be considered by the Court.

DATED:  January 22, 2024                **MOON LAW GROUP, PC**

By: /s/ Daniel J. Park
Kane Moon
Daniel J. Park
Michael Citrin
*Attorneys for* Plaintiff

1

PLAINTIFF BELEN TORREZ'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# **Table of Contents**

I.     INTRODUCTION ............................................................................................. 1

II.    PROCEDURAL HISTORY................................................................................ 2

III.   LEGAL STANDARD ...................................................................................... 3

IV.   ARGUMENT .................................................................................................... 5

  A.  Defendants' Evidence is Insufficient to Establish that the Amount in Controversy Exceeds $5,000,000.00 by a Preponderance of the Evidence. ................................. 5

    1.   Defendants Failed to Provide Competent Evidence of the Number of Class Members and Shifts Worked................................................................................. 6

    2.   Defendants' Amount in Controversy Allegation for Plaintiff's First and Second Causes of Action for Unpaid Wages are Based Solely on Speculation and Conjecture........... 8

    3.   Defendants' Amount in Controversy Calculation for Plaintiff's Third and Fourth Cause of Action for Meal Period and Rest Break Premiums is also Artificially Inflated. ................. 9

    4.   Defendants' Amount in Controversy Calculation for Plaintiff's Sixth Cause of Action for Unpaid Wages Upon Separation is also Artificially Inflated. .......................................... 11

    5.   Defendants' Amount in Controversy Calculation for Plaintiff's Seventh Cause of Action for Inaccurate Wage Statement Penalty Calculations are Derived from Unsupported Assumptions................................................................................... 11

    6.   The Court Should Not Examine other Figures Contributing to the Amount in Controversy because Defendant Failed to Proffer Evidence of these Figures....................... 12

V.    CONCLUSION................................................................................................ 13

# __Table of Authorities__

**Cases**

*Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Alvarez v. Ltd. Express, LLC*, 2007 U.S. Dist. LEXIS 58148, *11 (S.D. Cal. Aug. 8, 2007) . . . . . . . . . . . . . . . . . . 7, 11

*Conrad Assoc. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. Feb. 10, 1998) . . . . . . . . . . . . . . . . . . 5

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Deaver v. BBVA Compass Consulting & Benefits, Inc.*, 2014 U.S. Dist. LEXIS 72074, *17 (N.D. Cal. May 27, 2014) . . . . . . 7

*Dobbs v. Wood Grp. PSN, Inc.*, 2016 U.S. Dist. LEXIS 108714, *6 (E.D. Cal. Aug. 16, 2016) . . . . . . . . . . . . . . . . . . 5, 9

*Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ellis v. Pac. Bell Tel. Co.*, 2011 U.S. Dist. LEXIS 16045, *5 (C.D. Cal. Feb. 10, 2011) . . . . . . . . . . . . . . . . . . . . . . . 4

*Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Lowdermilk v. U.S. Bank Nat'l Ass'n,*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Marshall v. G2 Secure Staff, LLC*, 2014 U.S. Dist. LEXIS 95620, *3 (C.D. July 14, 2014) . . . . . . . . . . . . . . . . . . . 3, 10

*Mejia v. DHL Express (USA), Inc.*, 2015 U.S. Dist. LEXIS 67212, *5 (C.D. Cal. May 21, 2015) . . . . . . . . . . . . . . . . . . 4

*Mix v. Allstate Ins. Co.*, 2000 U.S. Dist. LEXIS 14260, *3 (C.D. Cal. Apr. 19, 2000) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ray v. Nordstrom Inc.*, 2011 U.S. Dist. LEXIS 146657, at *9 (C.D. Cal. Dec. 9, 2011) . . . . . . . . . . . . . . . . . . . . . . 10

*Roth v. Comerica Bank*, 799 F. Supp.2d 1107, 1115 (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9, 10

*Ruby v. State Farm Gen. Ins. Co.*, 2010 U.S. Dist. LEXIS 88812 (N.D. Cal. Aug. 4, 2010) . . . . . . . . . . . . . . . . . . . . 10

*Sanchez v. Russel, Inc* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*Townsend v. Brinderson Corp.*, 2015 U.S. Dist. LEXIS 85150 at *11 (C.D. Cal. Jun. 30, 2015) . . . . . . . . . . . . . . . . . . 6

*Weston v. Helmerich & Payne Int'l Drilling Co.*, 2013 U.S. Dist. LEXIS 132930 (E.D. Cal. Sep. 16, 2013) . . . . . . . . . . 10

*Yocupicio v. PAE Group, LLC*, 2014 U.S. Dist. LEXIS 178723, *21-22 (C.D. Cal. Dec. 29, 2014) . . . . . . . . . . . . . . . . 6

**Statutes**

28 U.S.C. § 144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1446(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PLAINTIFF BELEN TORREZ'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C.
§ 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

28 U.S.C. §§ 1332(d) .................................................................. 3

28 U.S.C. §1332(d)(2) ................................................................. 3

28 U.S.C. §1441 ...................................................................... 3

28 U.S.C. §1441(a) .................................................................... 3

Federal Rules of Evidence Rule 1002 ................................................... 7

Labor Code § 203 ..................................................................... 11

Labor Code § 226 ..................................................................... 12

Labor Code § 226(e)(1) ............................................................... 12

U.S. Const. art. III, § 2, cl. 1 ...................................................... 3

## Other Authorities

Dkt. 1, Declaration of Lea Nissen in support of Defendant's Notice of Removal ("Nissen Decl.") ............. 6, 7, 10

Dkt. No. 1 ("Removal."). ............................................................. passim

Dkt. No. 1 (Plaintiff's "Compl.") ............................................... 2, 5, 8, 10

PLAINTIFF BELEN TORREZ'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Class Action Fairness Act ("CAFA") permits a defendant to remove a class action suit from state court to federal court provided the proposed class has (1) more than 100 members; (2) the parties are minimally diverse; and (3) the amount in controversy in the aggregate exceeds the sum or value of $5 million. On December 15, 2023, Defendants Waldorf Astoria Employer LLC and Waldorf Astoria Management LLC (together, "Defendants") improvidently filed a Notice of Removal pursuant to CAFA. Plaintiff brings the instant Motion for Remand because Defendants failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. This Court should therefore remand this case back to the Los Angeles County Superior Court for the following reasons as more fully set forth herein.

Defendants' evidence alone is insufficient to prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. Defendants rely solely on the testimony of their own employee, Ms. Nissen. Ms. Nissen identifies three variables that form the basis of Defendants' calculations to arrive at the amount in controversy -- the average hourly rate of pay, the number of class members, and the approximate total shifts worked. However, Defendants offer no confirmatory evidence of these variables. As more fully developed herein, these variables self-servingly omit the critical information needed to plausibly determine the amount in controversy.

Despite being the party with superior access to information, Defendants omit the number or percentage of class members employed part-time as opposed to full-time. Defendants also fail to identify the average number of hours worked per day by class members. In addition, Defendants apply an average hourly rate to all violations without regard for the possibility that violation rates occur at greater frequency amongst lower-earning employees. Ultimately, Defendants simply

assume every class member worked eight hours for every shift of their employment with Defendant, in addition to assuming a 100% violation rate of one and a half hours of unpaid work, one hour of unpaid overtime, one meal period violation, and one rest break violation, per every five shifts worked. Defendants also assume a 100% violation rate for unpaid wages across all separated employees and assume the statutory maximum of thirty days of penalty accrual. Lastly, Defendants assume a 100% violation rate for inaccurate wage statements; that each employee received 10 noncompliant wage statements during the applicable period. Defendant's speculative assumptions not only pervade the Notice of Removal, thereby calling into question the accuracy of each estimate, but serve no purpose other than to artificially inflate the amount in controversy for jurisdictional purposes. Accordingly, this case should be remanded.

## II.  PROCEDURAL HISTORY

On November 6, 2023, Plaintiff, on behalf of herself and all others similarly situated, filed a class action lawsuit against Defendants in the Superior Court of California, County of Los Angeles. *See* Dkt. No. 1 (Plaintiff's "Compl.").[1] The Complaint contains eight (8) causes of action: (1) Violation of Labor Code Sections 510 and 1198 (Unpaid Overtime); (2) Violation of Labor Code Sections 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) Violation of Labor Code Section 226.7 (Unpaid Rest Period Premiums); (4) Violation of California Labor Code Sections 1194, 1197, and 1197.1 (Unpaid Minimum Wages); (5) Violation of Labor Code Sections 201 and 202 (Final Wages Not Timely Paid); (6) Violation of Labor Code Section 226(a) (Non-Compliant Wage Statements); (7) Violation of Labor Code Sections 2800 and 2802 (Unreimbursed Business Expenses); and (8) Violation of California Business & Professions Code Section §§ 17200, *et seq.* (Unfair Competition/Unfair Business Practices). *See generally* Compl., ¶¶ 29-93.

---

[1] All references to Plaintiff's Complaint will be cited as follows: "Compl., ¶ ___."

On December 15, 2023 Defendants filed and served their Notice of Removal pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441, and 144. *See* Dkt. No. 1 ("Removal."). Plaintiff now moves to remand this case because Defendants failed to prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum.

### III.    LEGAL STANDARD

Federal courts are of limited jurisdiction. *See* U.S. Const. art. III, § 2, cl. 1.  A federal court may exercise removal jurisdiction over a case only if jurisdiction existed over the suit as originally brought by the plaintiffs.  28 U.S.C. § 1441. "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (same).

The party desiring to invoke federal jurisdiction bears the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (stating that it is "presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal citation omitted). Section 1441(a) of the United States Code provides as a basis for removal to federal court any action filed in State court that originally could have been filed in federal court. *See* 28 U.S.C. §1441(a). "But courts strictly construe the removal statute against removal jurisdiction, and 'federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Marshall v. G2 Secure Staff, LLC*, 2014 U.S. Dist. LEXIS 95620, *3 (C.D. July 14, 2014) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

As a consequence of the Class Action Fairness Act ("CAFA"), district courts shall have original jurisdiction to hear class actions if the proposed class has (1) more than 100 members; (2) the parties are minimally diverse; and (3) the amount in controversy in the aggregate exceeds the sum or value of $5 million. *See* 28 U.S.C. §1332(d)(2); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir.

2015). A defendant seeking removal under CAFA shall file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014) (requiring that the notice of removal include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

A defendant's good faith allegation that the amount-in-controversy exceeds the jurisdiction threshold will suffice unless challenged; however, if challenged, the burden is on defendant to prove by a preponderance of the evidence that the amount in controversy has been met. *See, e.g.*, *Dart Cherokee*, 135 S. Ct. at 553-55 ("[e]vidence establishing the amount is required"); *Ibarra*, 775 F.3d at 1197; *Garibay v. Archstone Cmtys. LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. Rather, CAFA requires the removing party to support its amount-in-controversy allegation with real evidence. *See Dart Cherokee*, 135 S. Ct. at 554; *Ibarra*, 775 F.3d at 1198; *Mejia v. DHL Express (USA), Inc.*, 2015 U.S. Dist. LEXIS 67212, *5 (C.D. Cal. May 21, 2015) ("[w]hile [p]laintiff *may* rebut [d]efendant's evidence with his own evidence, he need not do so in order to prevail in his Motion.").

In attempting to satisfy its burden, Defendant must offer nothing less than competent evidence. *Gaus*, 980 F.2d at 567. In order to demonstrate the requisite amount in controversy, parties may submit "summary-judgment-type evidence" relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). A defendant "may rely on calculations to satisfy [its] burden so long as [its] calculations are good faith, reliable estimates based on the pleadings and other evidence in the record." *Ellis v. Pac. Bell Tel. Co.*, 2011 U.S. Dist. LEXIS 16045, *5 (C.D. Cal. Feb. 10, 2011). It is well-

4

PLAINTIFF BELEN TORREZ'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

settled in the Ninth Circuit that "[a] speculative argument regarding the potential value of the [amount in controversy] is insufficient." *Mix v. Allstate Ins. Co.*, 2000 U.S. Dist. LEXIS 14260, *3 (C.D. Cal. Apr. 19, 2000) (quoting *Conrad Assoc. v. Hartford Acc. & Indem. Co.,* 994 F. Supp. 1196, 1198 (N.D. Cal. Feb. 10, 1998)); *see also Ibarra,* 775 F.3d at 1197 (A defendant "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."); *Dobbs v. Wood Grp. PSN, Inc*., 2016 U.S. Dist. LEXIS 108714, *6 (E.D. Cal. Aug. 16, 2016) (citing *Ibarra*, 775 F.3d at 1199 (assumptions "cannot be pulled from thin air but need some reasonable ground underlying them.")  Calculations based on unreasonable and unsupported assumptions cannot overcome the Ninth Circuit's strict construction of removal statutes against removal jurisdiction. *See Roth v. Comerica Bank*, 799 F. Supp.2d 1107, 1115 (C.D. Cal. 2010) (citing cases).

As further shown below, the evidence Defendants offer is woefully inadequate for this Court to determine whether Defendant satisfied its burden by a preponderance of the evidence.

## IV. ARGUMENT

### A.     Defendants' Evidence is Insufficient to Establish that the Amount in Controversy Exceeds $5,000,000.00 by a Preponderance of the Evidence.

 "Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy has been met." *Abrego*, 443 F.3d at 683. Here, Plaintiff's Complaint does not specify the amount of damages sought; nor does the Complaint specify the frequency of the alleged violations. *See generally* Compl. Under these circumstances the removing party also bears the "burden of providing evidence of the frequency of the violations." *Sanchez v. Russel, Inc.*, 2015 U.S. Dist. LEXIS 55667, *20 (C.D. Cal. Apr. 28, 2015). Without such evidence there can be no plausible allegation that

the amount exceeds the jurisdictional threshold because the assumptions underlying the damage calculations are unsupported. *See Ibarra*, 775 F.3d at 1199 (recognizing that a "damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but needs some reasonable ground underlying them.").

1. **Defendants Failed to Provide Competent Evidence of the Number of Class Members and Shifts Worked.**

Defendant asserts, without providing a single supporting business record, that 717 class members worked a total of approximately 223,406 shifts and earned an average hourly rate of $24.71. *See* Removal, ¶¶ 36a, 36c. The only "support" proffered by Defendant is the declaration of Lea Nissen, Defendants' Regional Director of Human Resources. Dkt. 1, Declaration of Lea Nissen in support of Defendant's Notice of Removal ("Nissen Decl.") ¶¶ 7, 10. Presumably, Ms. Nissen reviewed Defendants' "system" to obtain the average hourly rate of pay, and the number of class members, and workweeks. *See id.* at ¶ 6. However, Ms. Nissen's declaration falls far short of the evidence upon which other courts have determined whether the amount in controversy has been met by a preponderance of the evidence. *See, e.g.*, *Yocupicio v. PAE Group, LLC*, 2014 U.S. Dist. LEXIS 178723, *21-22 (C.D. Cal. Dec. 29, 2014) ("declaration then recounts each project . . . each project's length, the number of employees who worked on each project, the number of shifts worked on each project, the length of the shifts worked, and the number of terminated employees. . . figures [were] supported by exhibits containing summary payroll records.").

Foremost, by failing to indicate which records were reviewed, this Court "is unable to discern whether [the declarant] reviewed actual employee time records and pay records, whether he relied on summaries prepared for him by someone else, or whether the records are something else entirely." *Townsend v. Brinderson Corp.*, 2015 U.S. Dist. LEXIS 85150 at *11 (C.D. Cal. Jun. 30, 2015) (declaration of

6

PLAINTIFF BELEN TORREZ'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

defendant's witness lacked foundation and could not be relied upon because it did not indicate which records were reviewed in order to arrive at the figures he provided). Also, Defendants' failure to produce these records violates Federal Rules of Evidence Rule 1002, the best evidence rule. The variables Defendant used to calculate the amount in controversy are unsupported, and do not constitute competent evidence.

Defendants' evidence does not reveal the average number of hours worked by each employee during the relevant time period, nor the number or percentage of class members who worked full-time as opposed to part-time. *See Alvarez v. Ltd. Express, LLC*, 2007 U.S. Dist. LEXIS 58148, *11 (S.D. Cal. Aug. 8, 2007) (holding "[t]he average time worked is a crucial number in calculating the amount in controversy."). Defendant also failed to account for sick days, vacation days, and other leave of absences of class members. *See Deaver v. BBVA Compass Consulting & Benefits, Inc.*, 2014 U.S. Dist. LEXIS 72074, *17 (N.D. Cal. May 27, 2014) ("In other words, [d]efendants' calculation assumes every class member worked every week of their employment – an assumption belied by common sense."). Instead, Defendant just alleges without support other than Ms. Nissen's declaration, that "the majority of [Defendants'] employees are full time employees who typically work eight hours per day, five days per week." Nissen Decl., ¶ 9. Again, it is unclear from where Ms. Nissen derived this figure, and further, the figure, "majority" is vague and overbroad. Consequently, Defendant's evidence is incomplete.  This renders all of Defendant's calculations inherently unreliable.

Although Defendants will likely argue that they need not prove Plaintiff's case, Defendants cannot reasonably dispute that they "[are] in the best position to adduce evidence regarding the working hours and wages of [their current and former employees]." *Roth v. Comerica Bank*, 799 F. Supp.2d 1107, 1129 (C.D. Cal. Aug. 31, 2010) (holding "it is proper for district courts to consider which party has access to or control over the records and information required to determine whether the

amount in controversy is met.") Despite Defendants' superior access to the records and information necessary to reasonably calculate the amount in controversy, Defendants chose not to use it. Plaintiff can only interpret this as a calculated strategy to artificially inflate the amount in controversy for jurisdictional purposes.

As neither the number of class workweeks nor number of class members is supported by summary judgment type evidence, all of Defendants' calculations of the amount in controversy must be disregarded.  Likewise, Defendants' Notice of Removal cannot possibly meet its burden.

> 2.  **Defendants' Amount in Controversy Allegation for Plaintiff's First and Second Causes of Action for Unpaid Wages are Based Solely on Speculation and Conjecture.**

Defendants estimate the amount in controversy for Plaintiff's first cause of action for unpaid minimum wages by assuming that all 717 employees will attempt to recover one and a half hours of unpaid non-overtime work for every five shifts worked. Removal, at ¶ 34. This unsupported estimate makes not only the assumption that 100% of the non-exempt employees will allege off-the-clock claims, but that each employee will allege that a violation occurred every five shifts throughout the entire duration of their employment within the statutory period.

Defendants arrive at the amount in controversy for Plaintiff's first cause of action for unpaid overtime wages assuming that all 717 employees worked missed one hour of unpaid, off-the-clock overtime work per every five shifts. Removal, at ¶ 35.  But Plaintiff did not allege that she and class members performed an hour of unpaid overtime work every week during the class period. *See* Compl., ¶¶ 39-47.

Defendants' violation rate is presumably based on Plaintiff's use of the term "uniform." But just as courts in the Ninth Circuit have rejected weekly violations derived from the words "consistently" and "pattern" and "practice," the term "uniform" likewise offers no basis for assuming a weekly violation. *See, e.g., Dobbs*

*v. Wood Grp. PSN, Inc.*, 2016 U.S. Dist. LEXIS 108714, *6 (E.D. Cal. Aug. 16, 2016); *Ibarra*, 775 F.3d at 1199; *Roth*, 799 F. Supp.2d at 1124-25. Because the Complaint's allegations do not justify applying Defendant's violation rate and Defendants offers no evidence of their violation rate, Defendants' amount in controversy allegations for unpaid off-the-clock and overtime work is unreliable and self-serving.

Moreover, Defendants' $2,077,675.80 estimate assumes that the data Defendants provided is accurate. As explained above, Defendants failed to provide competent evidence of the number of class members and the number of shifts worked – the two operative numbers used in these calculations. Consequently, any amount in controversy allegation derived using these variables are specious, unreliable and self-serving. Accordingly, Defendants have not carried their burden.

3. **Defendants' Amount in Controversy Calculation for Plaintiff's Third and Fourth Cause of Action for Meal Period and Rest Break Premiums is also Artificially Inflated.**

Defendants' amount in controversy calculations for Plaintiff's third and fourth cause of action (for non-provision of meal periods and rest breaks) is implausible because it is based entirely on unsupported assumptions. As discussed above, Defendants failed to provide competent evidence of number of class members and shifts worked. Nonetheless, Defendant based its amount in controversy calculation on these unverified figures.

Out of thin air, Defendant assumes one meal period violation and one rest break violation, and therefore two meal and rest period premiums, per every five shifts worked. Defendant offers neither reason nor evidence supporting a violation rate of one meal period and one rest break for every five shifts worked.

A pattern or practice, or a uniform policy, of failing to provide compliant meal and rest periods could easily be once every two weeks, once a month, or once every three months. *See Marshall v. G2 Secure Staff, LLC,* 2014 U.S. Dist. LEXIS 95620,

*8 (C.D. July 14, 2014) (holding that "consistently' does not necessarily amount to once per week."). The Complaint alleges neither a "uniform" practice nor a "pattern and practice" of Defendant's failure to provide compliant meal periods and to pay meal period premiums. *see* Compl. ¶¶ 48-55. The Complaint does not allege Defendants failed to provide compliant meal periods twice a week. *Id.* Defendants fail to provide work schedules, timecards, or any other records that ostensibly support its bald assertions. As neither the Complaint nor Defendant's proffered evidence support a violation rate of two (2) violations per every five shifts, there is no reasonable basis for Defendants' estimate.

Courts have rejected similar estimates to those proffered by Defendants here. *See, e.g., Weston v. Helmerich & Payne Int'l Drilling Co.*, 2013 U.S. Dist. LEXIS 132930, at *17 (E.D. Cal. Sep. 16, 2013) ("…Defendant provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week…"); *Ray v. Nordstrom Inc.*, 2011 U.S. Dist. LEXIS 146657, at *9 (C.D. Cal. Dec. 9, 2011) (rejecting employer's assumption that each class member missed one meal period and one rest period each pay period); *Ruby v. State Farm Gen. Ins. Co.*, 2010 U.S. Dist. LEXIS 88812, at *11-12 (N.D. Cal. Aug. 4, 2010) (rejecting defendant's estimate of one missed meal break and one missed rest break per workweek because there was no basis for making this assumption based on the complaint's allegations); *see, also e.g.*, *Ibarra*, 775 F.3d at 1199; *Roth*, 799 F. Supp.2d at 1124-25.

Moreover, Defendants fail to even lay the foundation that all of the shifts worked were of sufficient length to mandate the provision of meal periods. For purposes of their calculations, Defendants speculate and self-servingly assumes that every class member worked shifts longer than 5 hours per day, and is therefore entitled to one meal break. However, even Ms. Nissen's declaration alleges that only a "majority," and not all of Defendants' employees were working full time. Nissen Dec'l ¶ 9. By not providing an exact percentage, or even an estimated percentage of

employees who work less than eight hours five days per week, Defendants chose not to include the very information necessary to plausibly determine the amount in controversy. *See Alvarez*, U.S. Dist. LEXIS 58148 at *11 (holding "[t]he average time worked is a crucial number in calculating the amount in controversy.") Instead, Defendants presented a self-serving calculation that, for all the reasons herein, should be rejected.

Finally, as explained further above, the number of workweeks Defendants use to make their calculation is not supported by summary judgment type evidence.

Because the allegations contained in the Complaint do not support Defendants' estimate, and because Defendant did not provide any extrinsic evidentiary support for its estimate, Defendants' calculations for unpaid meal period and rest break premiums must be rejected.

**4.    Defendants' Amount in Controversy Calculation for Plaintiff's Sixth Cause of Action for Unpaid Wages Upon Separation is also Artificially Inflated.**

Defendants make unfounded assumptions to inflate the amount in controversy for Plaintiff's fifth cause of action for failing to timely pay final wages at termination. Firstly, Defendants cite only to Ms. Nissen's declaration to report that there were 303 terminated employees during the applicable time period. Removal ¶ 36a. Once again, Defendant does not support this number with records of any kind. Defendants then assume a 100% violation rate amongst all terminated employees and calculate thirty days' worth of violations per terminated employee, the maximum permitted by Labor Code § 203.  Therefore, Defendants estimate of $1,127,160.00 is inflated and not based in evidence.

**5.    Defendants' Amount in Controversy Calculation for Plaintiff's Seventh Cause of Action for Inaccurate Wage Statement Penalty Calculations are Derived from Unsupported Assumptions.**

Plaintiff's sixth cause of action derives from Plaintiff's first, second, third and fourth causes of action and is based on Labor Code § 226, which requires employers to keep accurate records regarding the rates of pay for their California employees. *See* Compl., ¶¶ 67-74. The penalty for violating Labor Code § 226 is fifty ($50) for the initial violation and a hundred ($100) for subsequent violations but not to exceed four thousand ($4,000). *See* Labor Code § 226(e)(1). In calculating the amount in controversy – which Defendant estimates to be $681,150.00 – Defendants assume, without any supporting evidence, each class member in the relevant statutory period received ten noncompliant wage statements. Removal ¶ 40.

Plaintiff did not allege the frequency of such violations. *See* Complaint ¶¶ 67-74. Therefore it was incumbent on Defendant to provide "evidence of the frequency of the alleged violations" when determining the amount in controversy. *Sanchez v. Russel, Inc.*, 2015 U.S. Dist. LEXIS 55667, *20 (C.D. Cal. Apr. 28, 2015).

Defendant furnished no evidence and simply assumed a violation to artificially inflate the amount in controversy. *See* Removal, ¶ 40. Accordingly, Defendant has failed to prove by a preponderance of the evidence that the range of liability with respect to Plaintiff's sixth cause of action is $681,150.00.

## 6. The Court Should Not Examine other Figures Contributing to the Amount in Controversy because Defendant Failed to Proffer Evidence of these Figures.

In determining whether Defendant has met its burden for removal, the Court should not examine other figures that contribute to the amount in controversy, including damages associated with Plaintiff's fifth cause of action (failure to indemnify necessary business expenses) and eighth cause of action (unfair businesses practices), and any remaining attorney's fees claims, because Defendant offers no evidence or estimates for these figures. *Cf. Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007) ("A court may not base its jurisdiction on speculation and conjecture.")

## V.  CONCLUSION

Defendants' amount in controversy allegations depend entirely on the unsupported declaration of Ms. Nissen, who identifies the only variables forming the basis of Defendants' calculations. Defendants further include speculative assumptions concerning the frequency of alleged violations, and erroneously assume 100% violation rates without evidentiary support. Defendants thus failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.00. Accordingly, Defendants have not overcome the Ninth Circuit's strict construction of removal statutes against removal jurisdiction. This case must be remanded back to the Los Angeles County Superior Court.

DATED:  January 22, 2024                              **MOON LAW GROUP**

                                                                          By: /s/ Michael Citrin
                                                                                  Kane Moon
                                                                                  Daniel J. Park
                                                                                  Michael Citrin
                                                                                  *Attorneys for* Plaintiff