UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:23-cv-10510-MCS-PVC | Date February 21, 2024 |
| Title *Harmony Blossom v. Waldorf Astoria Employer, LLC et al* | |

Present: The Honorable  Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER RE: MOTION TO REMAND (ECF NO. 11) (JS-6)

Plaintiff Harmony Blossom brought this putative wage and hour class action against her former employers, Defendants Waldorf=Astoria Employer LLC and Waldorf=Astoria Management LLC, in the Los Angeles County Superior Court, and Defendants removed it to this Court. (*See generally* Notice of Removal, ECF No. 1; Compl., ECF No. 1-3.) Plaintiff moves to remand. (Mot., ECF No. 11.) The motion is fully briefed. (Opp'n, ECF No. 13; Reply, ECF No. 14.) The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

I.  **BACKGROUND**

According to the complaint, Plaintiff is a California resident who worked for Defendants as a nonexempt server beginning in 2017. (Compl. ¶¶ 7, 13.) Plaintiff alleges Defendants violated various California labor laws, asserting eight claims: (1) failure to pay minimum wages, Cal. Lab. Code §§ 204, 1194, 1194.2, 1197; (2) failure to pay overtime compensation, *id.* §§ 1194, 1198; (3) failure to provide meal periods, *id.* §§ 226.7, 512; (4) failure to authorize and permit rest breaks, *id.* § 226.7; (5) failure to indemnify necessary business expenses, *id.* § 2802; (6) failure

to timely pay final wages at termination, *id.* §§ 201–03; (7) failure to provide accurate itemized wage statements, *id.* § 226; and (8) unfair business practices, Cal. Bus. & Prof. Code § 17200. (*Id.* ¶¶ 29–93.) Plaintiff seeks to represent a class of people who worked for Defendants in California as hourly, nonexempt employees at any time between November 6, 2019, and the date class notice issues. (*See id.* ¶¶ 20–28.)

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise original jurisdiction over the action. 28 U.S.C. § 1441(a). If a defendant fails to meet its burden of establishing subject-matter jurisdiction, the suit must be remanded. *Id.* § 1447(c).

The Class Action Fairness Act of 2005 ("CAFA") provides federal subject-matter jurisdiction if (1) the proposed plaintiff class is not less than 100 members, (2) the parties are minimally diverse, and (3) the aggregate amount in controversy exceeds $5 million. *Id.* § 1332(d)(2), (5)(B). "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing S. Rep. No. 109-14, at 42 (Feb. 28, 2005)). Although "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), the removing party still bears the burden of establishing federal jurisdiction, *see Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) ("The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal.").

Where the amount in controversy is not apparent from the face of the complaint, the removing party is "required to show the amount in controversy by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *accord Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). Generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," but where a plaintiff contests the amount in controversy put forth by the defendant, "[e]vidence establishing the amount is required." *Dart Cherokee Basin*, 574 U.S. at 89. The parties, thus, "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence

relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

### III.   DISCUSSION

Plaintiff questions whether the CAFA amount-in-controversy threshold is satisfied, arguing that Defendants' estimates rely upon implausible, unwarranted assumptions about their potential liability. (Mot. 5–12.) The Court agrees. The amount in controversy is not clear from the face of the complaint. (*See generally* Compl.) Defendants' evidence to support its estimates of the amount placed in controversy by Plaintiff's claims rests on speculation and conjecture, which does not suffice to meet their burden to show jurisdiction lies in this Court.

#### A.   General Objections to Evidence

As a threshold issue, Plaintiff asserts that the declaration upon which Defendants largely rest their calculations is inadequate. (Mot. 6–8.) To support removal, Defendants offered a declaration from Lea Nissen, a Regional Director of Human Resources for Hilton Employer Inc. who provides human resources support for Defendants. (Nissen Removal Decl. ¶¶ 1, 4, ECF No. 1-1.) Nissen provides a summary of information about the putative class she synthesizes from her review of Defendants' human resources information system, with which she is familiar based on her position as a human resources regional director. (*Id.* ¶¶ 4–6.) The declarant provides information to support her personal knowledge of the substantive facts stated in the declaration, which gives it at least some evidentiary weight. *See Arrow Elecs., Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position."); *see, e.g.*, *Tennison v. Hub Grp. Trucking, Inc.*, No. LA CV20-05076 JAK (SPx), 2020 U.S. Dist. LEXIS 243452, at *19–21 (C.D. Cal. Dec. 28, 2020) (denying motion to remand upon evidence provided by defense declarant who was "generally familiar with Defendants' operations at 30 facilities in California"); *Duberry v. J. Crew Grp., Inc.*, No. 2:14-cv-08810-SVW-MRW, 2015 U.S. Dist. LEXIS 99171, at *9–14 (C.D. Cal. July 28, 2015) (rejecting challenge to defense declaration supporting amount in controversy where declarant "demonstrated a general familiarity with the kind of data that was accessed from J. Crew's record keeping system to prepare the reports from which her declaration was generated, as well as how that information would have been accessed").

That said, Plaintiff correctly identifies some gaps in the declaration that inform the Court's analysis of its jurisdiction. Ms. Nissen submits that approximately 717 individuals were employed as nonexempt employees at the Waldorf Astoria Beverly Hills, where Plaintiff worked, between November 6, 2019, and September 15, 2023, and that 303 employees separated employment with Defendants between November 6, 2020, and September 15, 2023. (*Id.* ¶¶ 7–8.) Ms. Nissen submits that the majority of the employees are full time; the employees worked a total of approximately 223,406 shifts between November 6, 2019, and September 15, 2023; that the average hourly rate of pay of the employees currently is $24.71; and that the putative class members were paid on a biweekly or semimonthly basis. (*Id.* ¶¶ 9–12.) The data leave uncertain the precise ratio of full-time to part-time employees, the average number of hours or shifts each employee worked during the class period, and the average hourly rate of pay during the class period prior to the date of removal. Given these uncertainties, for the reasons discussed below, Defendants' estimates of the amount placed in controversy by each claim are too speculative to support their burden to demonstrate jurisdiction.

Further, the Court does not credit the declaration of counsel submitted in connection with Defendants' opposition papers. Connie L. Chen declares, "Based on my and my firm's review of the Defendants' time and pay records received from Defendants in this matter, Defendants employed approximately 434 non-exempt employees during the time period from November 6, 2022 to September 15, 2023 at the Waldorf Astoria Beverly Hills where Plaintiff worked." (Chen Decl. ¶ 3, ECF No. 13-1.) Unlike Ms. Nissen, Ms. Chen has not provided enough information from which the Court can confirm her personal knowledge of the information provided, especially given that her declaration is worded such that it is unclear whether she personally reviewed the records she summarizes.

### B. Unpaid Minimum Wages Claim

Upon removal, Defendants estimated Plaintiff's first claim for unpaid minimum wages places $1,038,837.90 in controversy. (Notice of Removal ¶ 34.) Defendants assumed that Plaintiff and the class will seek to recover one-and-a-half hours of unpaid non-overtime work for every five shifts worked at a rate of $15.50 per hour. (*Id.*) In its briefing, Defendants change their estimate to $1,385,117.20. (Opp'n 12–13.) The updated calculation assumes that Plaintiff and the class will seek to recover one hour of unpaid non-overtime work for every five shifts worked at a

rate of $15.50 per hour, and doubles that amount for liquidated damages under section 1194.2. (*Id.*)

None of this is justified by the evidence and allegations in the record. Why Defendants assume a rate of $15.50 per hour, consistent with the minimum wage in California in 2023,[1] is unclear when their own evidence indicates that the average wage rate of putative class members is currently $24.71. (Nissen Decl. ¶ 10.) Even that rate is an unreliable indicator, as Defendants leave unsaid what the rate was earlier in the class period, a significant omission in a period of significant wage growth across the economy. *See* Fed. R. Evid. 201(b)(1); *e.g.*, *Above-average wage growth in the leisure and hospitality industry*, FED. RSRV. BANK OF ST. LOUIS (Sept. 7, 2023), https://fredblog.stlouisfed.org/2023/09/above-average-wage-growth-in-the-leisure-and-hospitality-industry [https://perma.cc/V38G-FTZ5]. And why Defendants assume one-and-a-half (or one) hours of unpaid work for every five shifts goes completely unexplained. The fluctuation in Defendants' assumption between removal and motion briefing suggests their assumption is largely arbitrary. Defendants offer persuasive authority for the proposition that assuming one hour of unpaid minimum wages per workweek "is reasonable when a complaint alleges a defendant has a policy or practice of failing to pay wages." (Opp'n 13 (citing *Rapisura v. BMW of N. Am., LLC*, No. 2:22-cv-00455 WBS AC, 2022 U.S. Dist. LEXIS 88600, at *7 (E.D. Cal. May 17, 2022), and *Cabrera v. S. Valley Almond Co., LLC*, No. 1:21-CV-00748-AWI-JLT, 2021 U.S. Dist. LEXIS 240881, at *17–18 (E.D. Cal. Dec. 16, 2021)).) The Court doubts Defendants' premise holds as a matter of law in the absence of supporting evidence or allegations. Here, the allegations about the offending policies and practices identified do not give rise to a reasonable inference that the unpaid time amounted to one hour per workweek or one hour per every five shifts. (*See* Compl. ¶ 15 (alleging a policy and practice of requiring employees to wait in line to clock into work and present identification to security without compensation).)

Having failed to justify their assumptions supporting the wage rate and violation rate that factor into their calculation, Defendants have not met their burden to show by a preponderance of the evidence that any amount is placed in controversy by this claim.

---

[1] Defendants' minimum wage assumption is further undermined by the fact that the minimum wage has increased over the course of the class period. *See* Cal. Lab. Code § 1182.12(b)–(c).

### C.     Unpaid Overtime Claim

Defendants estimate Plaintiff's second claim for unpaid overtime places $1,038,837.90 in controversy. (Notice of Removal ¶ 35; Opp'n 14.) Again, Defendants assume a violation rate of one hour per every five shifts worked and a wage rate of $15.50. (Opp'n 14.) For the same reasons detailed in the previous section, Defendants' assumptions are unjustified given the evidence and allegations. Further undermining Defendants' calculation is the presence of an unspecified number of part-time employees in the proposed class. (Nissen Decl. ¶ 9.) The policy and practice allegations undergirding the minimum wage claim and the overtime claim are the same. (*See* Compl ¶ 15.) But the violation rate should be lower overall for the overtime claim compared with the minimum wage claim given that the overtime violation rate for part-time employees logically should be lower than the minimum wage violation rate. In other words, unpaid time worked by part-time employees due to the alleged policies and practices is more likely to be non-overtime work. Yet Defendants assume without justification the violation rate for the two claims is the same. Defendants have failed to substantiate their estimate of the amount placed in controversy by this claim.

### D.     Meal and Rest Break Claims

Defendants estimate Plaintiff's third and fourth claims for meal and rest break violations each place $692,558.60 in controversy. (Notice of Removal ¶¶ 36–37; Opp'n 14–15.) They assume one meal and one rest break violation every five shifts and a minimum wage rate. (Opp'n 14–15.) The issues identified above with respect to Defendants' wage rate estimate are equally applicable here. Similarly, the estimated violation rate cannot reasonably be inferred from Plaintiff's (admittedly conclusory) allegations that Defendants failed to provide legally compliant meal and rest periods "sometimes." (Compl. ¶¶ 16–17); *cf. Marshall v. G2 Secure Staff, LLC*, No. 2:14-cv-04322-ODW (MANx), 2014 U.S. Dist. LEXIS 95620, at *8 (C.D. Cal. July 14, 2014) ("'[C]onsistently' does not necessarily amount to once per week. Some regularity can be discerned, but without further support, there is no justification for using a once-per-week rubric versus a twice-per-month rubric or a three-times-per-year rubric."). Unique to this claim is an unsubstantiated assumption implicit in Defendants' proposed violation rate that putative class members were entitled to a meal or rest break during all their shifts. (*See* Opp'n 15 (resting calculation on total number of shifts during the class period).) Given unanswered questions regarding the number of part-time employees in the putative class, (*see* Nissen Decl. ¶ 9), the Court cannot approximate how many of the 223,406 shifts

worked were long enough to entitle employees to meal and rest breaks. For example, if one of every five shifts worked was four hours long, then Defendants' proffered meal break violation rate is effectively 25%, which exceeds the violation rates adopted in the absence of supporting evidence in the cases they cite. (Opp'n 15 (citing *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016), and *Mendoza v. Savage Servs. Corp.*, No. 19-CV-00122-RGK-MAA, 2019 U.S. Dist. LEXIS 45269, at *5 (C.D. Cal. Mar. 19, 2019)).) Defendants' meal and rest break estimates are too speculative to be sustained.

### E. Unpaid Wages Upon Separation Claim

Defendants assert the unpaid wages upon separation claim places $1,127,160.00 in controversy. (Notice of Removal ¶ 38; Opp'n 15–16.) Defendants' calculation rests on the product of several unsupported premises: the California minimum wage rate, an unjustified assumption discussed *supra*; a 100% violation rate for all 303 employees who separated their employment with Defendants during the class period, (Nissen Decl. ¶ 8); and the maximum penalty authorized by statute of 30 days per employee, Cal. Lab. Code § 203(a). (Opp'n 15–16.) Defendants offer no evidence or allegations to support a 100% violation rate or maximum penalties; instead, they rest these assumptions on nonbinding case law from district courts. (Opp'n 15–16.) Other nonbinding authorities have rejected such assumptions in the absence of support from the record. (*See* Reply 7–9 (citing cases).) The Court need not parse the caselaw to find a 100% violation rate unsupported by the record in this case, which does not present an inference that the Labor Code violations described in the complaint ubiquitously impacted all separated employees. As but one example, Plaintiff asserts class members "were required to show their identification to security in order to be allowed to drive inside the premises," (Compl. ¶ 15), an issue that would not impact employees who commuted by public transportation or other means to the worksite. Again, Defendants have not justified their estimate of the amount placed in controversy by this claim with reasonable assumptions supported by the record.

### F. Inaccurate Wage Statement Penalty Claim

Defendants submit that the inaccurate wage statement claim should be valued at $681,150.00. (Notice of Removal ¶ 40.)[2] Their calculation rests upon an

---

[2] Defendants revise their estimate in their brief, but the new estimate rests on the declaration of counsel the Court does not credit. (Opp'n 16–17.)

unexplained assumption that each of the 717 members of the class "received 10 noncompliant wage statements during the applicable timeframe." (*Id.*) This assumption is untethered to any evidence or allegations in the complaint; as Defendants argue, the complaint suggests, if anything, that every wage statement for every class member was noncompliant. (Opp'n 16–17 (citing Compl. ¶¶ 19, 67–74).) A 100% violation rate, in turn, would be unreasonable to assume without some grounding evidence, especially given the Court's questions concerning the amount placed in controversy by the other claims. *Cf. Amirian v. Umpqua Bank*, No. CV 17-7574 FMO (FFMx), 2018 U.S. Dist. LEXIS 129228, at *17 (C.D. Cal. July 31, 2018) ("In the absence of evidence regarding how many class members were not allowed to take meal and rest periods, how many were not paid in a timely manner after termination, and how many otherwise were not paid for all hours work, the court has no basis from which to infer a 100% violation rate."). Without any evidence to justify their cornerstone assumption, Defendants fail to establish any amount placed in controversy by this claim. *See, e.g.*, *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, No. 2:23-cv-02802-MCS-JC, 2023 U.S. Dist. LEXIS 142598, at *7–8 (C.D. Cal. Aug. 14, 2023) (Scarsi, J.) (assigning $0 to wage statement claim estimate defendant failed to support with evidence).

### G. Other Issues

Defendants offer no estimate of the amount placed in controversy by the two remaining claims, failure to indemnify necessary business expenses and unfair business practices. (*See* Opp'n 17; *see generally* Notice of Removal.) Defendants accordingly do not meet their burden to show any amount is placed in controversy by these claims.

Defendants submit that the Court can assume without any supporting evidence that attorney's fees in a wage and hour class action may be valued at 25 percent of the projected damages. (*See* Opp'n 17–19.) The Court will not do so. *See Corral v. Staples Off. Superstore LLC*, No. 2:22-cv-01254-MCS-PVC, 2022 U.S. Dist. LEXIS 109084, at *9 n.6 (C.D. Cal. May 9, 2022) (Scarsi, J.) (rejecting similar argument and distinguishing *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020), on the basis that "the defendant in *Greene* submitted evidence showing the plaintiff's attorney would seek fees in an amount equal to or greater than 25 percent of the underlying amount in controversy"). In any event, 25 percent of a speculative estimate would itself be speculation.

### H.     Summary

Defendants have not substantiated the assumptions undergirding their estimates of the amount in controversy. The Court cannot determine that the amount-in-controversy requirement for jurisdiction under CAFA is met. 28 U.S.C. § 1332(d). Remand is warranted. *Id.* § 1447(c).

## IV.     CONCLUSION

The Court grants the motion and remands this case to the Los Angeles County Superior Court, No. 23STCV27316. The Court directs the Clerk to effect the remand immediately and close the case.

**IT IS SO ORDERED.**